IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 23, 2008

**PATRICK SMOTHERMAN v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-59677    James K. Clayton, Jr., Judge**

_____

**No. M2007-01419-CCA-R3-PC - Filed March 7, 2008**

_____

The Petitioner, Patrick Smotherman, pled guilty to selling more than .5 grams of cocaine. He petitioned the court for post-conviction relief, claiming that he did not receive the effective assistance of counsel and that his guilty plea was not voluntarily, knowingly, or intelligently entered. The post-conviction court denied relief, and it is from this judgment that the Petitioner now appeals. After reviewing the evidence and applicable law, we conclude that the post-conviction court did not err, and we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

John H. Baker, III (on appeal) and Ben Hall McFarlin, III (at hearing), Murfreesboro, Tennessee, for the Petitioner, Patrick Smotherman.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Leslie E. Price, Assistant Attorney General; William C. Whitesell Jr., District Attorney General; Chad Jackson, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

At the Petitioner's post-conviction hearing, the following evidence was presented: the Petitioner testified how his attorney, Rusty Perkins ("Counsel"), ineffectively represented him during his guilty plea. The Petitioner's first allegation of ineffective representation was that Counsel did not correct the erroneous street name listed in the guilty plea of where the Petitioner sold cocaine.

1

The guilty plea described him selling cocaine on State Street, however, the Petitioner maintained that he only sold drugs on Sevier Street. Additionally, he claimed that Counsel watched a videotape of him selling drugs on State Street, but the tape showed "nothing . . . [since] it was shining up in the trees." The Petitioner also alleged that Counsel was ineffective by not getting his bicycle returned to him, although the Petitioner admitted he never informed Counsel about the missing bicycle. When specifically asked how he was prejudiced by these alleged errors, the Petitioner simply replied, "I was prejudiced because [Counsel] wouldn't do what he was supposed to." Addressing his claim that his guilty plea was invalid, the Petitioner said he only plead guilty "because [he] was tired of [Counsel] . . . hounding [him] about it." He continued, saying that he did not understand to what he was pleading, and he did not understand the range of the sentence he would serve. He stated, "No, I didn't want to plead guilty that day. I was tired of fooling with it, tired of being in jail with it. I had been in jail for a year and a half."

On cross-examination, the Petitioner testified that he thought Counsel should have followed up on testimony heard in General Sessions Court saying that the Petitioner was caught selling drugs on Sevier Street. The Petitioner acknowledged that Counsel represented him on a sealed indictment, so there was no preliminary hearing, and, in fact, the General Sessions hearing to which the Petitioner referred was for two other drug charges pending against him. The Petitioner also testified that Counsel never showed him the videotape that depicted the police arresting or "picking up" the Petitioner for selling drugs but instead showed him a "tape of trees." He said he wanted to see the tapes to prove to the court that "[he] wasn't an aider and abettor." The Petitioner said that Counsel told him that he would not "look into this case," and that he would "just put [his] thing off nine more months," referring to delaying the Petitioner's case. The Petitioner denied signing a form agreeing he would serve his entire sentence. On redirect, the Petitioner summarized that he wanted the court to "run [his] concurrent sentence like it was and get this bogus charge off of [him]."

Counsel testified that he represented the Petitioner in this case. He stated that, initially, the Petitioner did not want to accept a plea offer, so Counsel set a trial date. Counsel said he filed a motion for discovery, and he received a videotape from the State, which he reviewed with the Petitioner. They were ready to proceed with trial when the State offered the Petitioner a deal combining this charge and two other pending charges for selling cocaine. Counsel testified that he went over the deal "extensively" with the Petitioner, and the Petitioner understood the terms of the deal. Counsel said he did not remember any discussion about the return of personal property to the Petitioner, and the Petitioner never mentioned anything to him about any missing belongings.

On cross-examination, Counsel explained that the Petitioner's sentence in this case ran concurrently with another sentence the Petitioner received for two additional counts of selling cocaine. Counsel said the original offer was for the Petitioner to plead guilty to the single charge in this case as a Range II offender, which would make him eligible for parole after serving thirty-five percent. In the plea the Petitioner accepted, he pled as a Range I offender, applying to all three sale of cocaine charges against him, with eligibility for parole after serving thirty percent of his assigned sentence. Counsel then explained that the videotape the State provided showed the Petitioner riding a bicycle.

2

Darrell Scarlett, who represented the Petitioner on his other two charges of selling cocaine, testified that he discussed the same videotape of the Petitioner's arrest with him. Scarlett felt the Petitioner understood the plea and the conditions of it.

The trial court found the Petitioner not credible given his long criminal record and his admission in court that he was "guilty of either aiding and abetting or conspiracy to commit as well as being responsible for the illegal actions of another." The trial court also found the Petitioner did "not carr[y] the burden of showing that there was any prejudice to [him]." Specific to the misnaming of the street in the guilty plea, the court found that State Street and Sevier Street "run parallel to each other, one block apart . . . . [S]o that's not that big a mistake. It could have been corrected by an amendment . . . . to the indictment." Subsequently, the post-conviction court denied the Petitioner's petition for post-conviction relief, and it is from that judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner alleges that he did not receive the effective assistance of counsel and that his guilty plea was not voluntarilyy, knowingly, or intelligently entered.

### A. Ineffective Assistance of Counsel

The Petitioner initially claims that he did not receive the effective assistance of counsel. The State counters that the Petitioner did not show deficient representation or prejudice. We agree with the State.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether

the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688 (1984)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland,* 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

In this case, the Petitioner takes issue with the fact that he pled guilty to selling cocaine on State Street, when he actually sold cocaine on Sevier Street. He claims this error made his representation ineffective. Additionally, he claims Counsel was ineffective for not showing him the videotape and not retrieving his bicycle from the police. Under the facts and circumstances of this case, whether the Petitioner pled guilty to selling cocaine on State Street rather than Sevier Street, which are parallel and one block apart from each other, is of little consequence. As the post-conviction court noted, an indictment may be amended under appropriate circumstances. Additionally, courts may "correct mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission." Tenn. R. Crim. P. 36. Any discrepancy concerning the name of the street does not in this case appear to have affected the constitutionality

of the Petitioner's guilty plea or the effectiveness of Counsel. Furthermore, the facts, as found by the trial court, show that Counsel filed the proper motions for discovery, received a videotape of the Petitioner from the prosecution, and watched and explained the video to the Petitioner. Counsel adequately represented the Petitioner. The Petitioner never told Counsel about wanting or needing his bicycle back from the police, so we cannot conclude that Counsel was anything but effective representation in that regard. When asked about prejudice he suffered as a result of Counsel's alleged deficient representation, the Petitioner merely stated that he had been prejudiced, but offered no specifics. The Petitioner has not proven any prejudice from Counsel's alleged deficiencies in representation, and, therefore, he is not entitled to relief on this claim.

### B. Nature of the Guilty Plea

The Petitioner next alleges that his guilty plea was not voluntarily, knowingly, or intelligently entered. The State responds by arguing that the trial court did not find the Petitioner's testimony credible, and the Petitioner did not adequately prepare the record for appellate review, so the appellate court must presume the trial court properly admonished the Petitioner of his rights.

In order for us to review whether a guilty plea was voluntarily, knowingly, and intelligently made, we must review the guilty plea hearing transcript, which the Petitioner did not include in his appeal. Without this crucial aspect of the record, we must presume the post-conviction court's determination was correct, and the trial court properly advised the Petitioner of his rights when he pled guilty. *State v. Boling*, 840 S.W.2d 944, 951 (Tenn. Crim. App. 1992). The Petitioner is not entitled to relief on this issue.

### III. Conclusion

We conclude that the Petitioner failed to prove that the post-conviction erred in its denial of relief. The Petitioner proved neither that his Counsel was ineffective nor that his guilty plea was constitutionally defective. Based on the foregoing reasoning and authorities, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE